# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

TVESTMENTS, LTD,

        Plaintiff,

v.

L.K. STATION GROUP, LLC, a Florida
limited liability company, SLN
MANAGEMENT, LLC, a Delaware
limited liability company, and SPECIAL K
INVESTORS, LLC, a Delaware limited
liability company,

        Defendants.

Civil Action No. _____

## 08-22779-CIV-JORDAN/MCALILEY

> FILED by __*IG*__ D.C.
> ELECTRONIC
>
> **OCT 6, 2008**
>
> STEVEN M. LARIMORE
> CLERK U.S. DIST. CT.
> S.D. OF FLA. · MIAMI

## COMPLAINT FOR DAMAGES AND LIEN FORECLOSURE

Plaintiff Tvestments, Ltd ("Tvestments") sues Defendants L.K. Station Group, LLC ("LK"), a Florida limited liability company, SLN Management Group, LLC ("SLN"), a Delaware limited liability company, and Special K Investors, LLC ("Special K"), a Delaware limited liability company, and alleges as follows.

### Parties, Venue, and Jurisdiction

1.    This is an action to enforce a Secured Promissory Note signed by defendant LK in Miami-Dade County, Florida on or about August 30, 2007 ("Note").

2.    Plaintiff Tvestments is a British Virgin Islands company that made a $2 million loan to LK under the Note on or about August 30, 2007.

3.    Defendant LK is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. LK used the $2 million, upon information and belief, to pay expenses and to make a deposit on a contract to acquire two television stations.

DB1/62156243.3

MORGAN, LEWIS & BOCKIUS LLP

5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

4. Defendant SLN is a Delaware limited liability company doing business in the State of Florida with its principal place of business in Miami-Dade County, Florida. The manager of LK, Barbara Laurence, is the manager of SLN. Under a pledge agreement, described more fully herein, SLN pledged collateral to secure the Note.

5. Defendant Special K is a Delaware limited liability company doing business in the State of Florida with its principal place of business in Miami-Dade County, Florida. A principal investor in LK, Seth Kanegis, is the manager of Special K. Under a pledge agreement, described more fully herein, Special K pledged collateral to secure the Note.

6. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 insofar as, among other things, a substantial part of the events or omissions giving rise to the causes of action asserted herein took place in this District.

7. This Court has original jurisdiction over this action under 28 U.S.C. §1332. This action is between a foreign company and citizens of a State and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Tvestments is seeking the repayment of a $2 million dollar loan, plus accrued interest, default interest, fees, and costs.

**Execution and Delivery of the
Promissory Note and Pledge Agreements**

8. On or about August 30, 2007, Barbara Laurence, on behalf of LK, executed the Note in favor of Tvestments in the principal amount of TWO MILLION and no/100 DOLLARS ($2,000,000.00). A true and correct copy of the Note is attached as Exhibit "A."

9. The Note was executed by LK in connection with LK's plan to develop a television station group in which Tvestments and various affiliates would fund the acquisition of two television stations. On or about April 4, 2008, LK commenced an action against Tvestments

and some of its affiliates for not funding the loan to LK to allow it to acquire the two stations. On July 29, 2008, the Supreme Court in New York, per the Honorable Herman Cahn, granted the motion to dismiss filed by Tvestments and its affiliates and dismissed LK's claims with prejudice. LK has appealed the dismissal of some of its claims and oral argument on the appeal in the First Department in New York is scheduled for November 2008.

10.    The Note provides that the "aggregate unpaid principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on August 30, 2008 ...." *See* Exhibit "A" at 1. Failure to pay principal and interest by August 30, 2008 constitutes an "Event of Default," entitling Tvestments to commence an action to enforce the Note without notice. *See* Exhibit "A" at 2-3.

11.    Under the Note, LK agreed to pay all costs and expenses, including reasonable attorneys' fees and court costs, incurred by Tvestments in connection with any Event of Default, enforcement of its rights under the Note, and collection of amounts payable under the Note. *See* Exhibit "A" at 3.

12.    The Note is secured by two pledge agreements, the first executed by Barbara Lawrence, the manager of SLN ("SLN Pledge Agreement") and the second executed by Seth Kanegis, the manager of Special K ("Special K Pledge Agreement," and with the SLN Pledge Agreement, the "Pledge Agreements"). True and correct copies of the SLN Pledge Agreement and the Special K Pledge Agreement are attached as Exhibits "B" and "C," respectively.

13.    The SLN Pledge Agreement and Special K Pledge Agreement, each also dated August 30, 2007, bind SLN and Special K as pledgors of collateral on behalf of LK under the Note.

14.     SLN, upon information and belief, owns 50% of the membership interests in

SATV-10, LLC ("SATV").   On or about August 30, 2007, SLN pledged as collateral for the

Note a first priority security interest and controlling lien in its membership interest in SATV.

*See* Exhibit "B" at 1.

15.     SLN is bound to pay Tvestments for all expenses it incurs enforcing the SLN

Pledge Agreement, including reasonable attorneys' fees.  *See* Exhibit "B" at 4.

16.     Special K, upon information and belief, owns 50% of the membership interests

SATV.  On or about August 30, 2007, Special K pledged as collateral for the Note a first

security interest and controlling lien in its membership interest in SATV.  *See* Exhibit "C" at 1.

17.     Special K is bound to pay Tvestments for all expenses it incurs enforcing the

Special K Pledge Agreement, including reasonable attorneys' fees.  *See* Exhibit "C" at 4.

18.     On or about September 26, 2008, Tvestments perfected its security interests in the

collateral pledged by SLN and Special K by filing UCC-1 financing statements with the State of

Delaware, the jurisdiction in which SLN and Special K were organized.  True and correct copies

of the UCC-1 financing statements for SLN and Special K are attached as Exhibits "D" and "E,"

respectively.

19.     The interests of all Defendants are subject, subordinate, and inferior to the right,

title, interests, and liens created by the Note and Pledge Agreements and held by Tvestments.

### LK's Default

20.     On August 30, 2008, LK defaulted under the Note by failing to pay sums due and

owing under the Note.  This failure to pay is an Event of Default under the Note.

21.     Even though the Note, upon an Event of Default, authorizes suit without any

notice to LK, Tvestments, on or about October 1, 2008, notified LK of its default and demanded

MORGAN, LEWIS & BOCKIUS LLP

5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

that LK make full and complete payment under the Note or provide a written, feasible plan for prompt payment by close of business on October 2, 2008. A true and correct copy of the letter to LK, dated October 1, 2008, is attached hereto as Exhibit "F."

22.    LK has failed to satisfy the demand made by Tvestments. LK owes Tvestments in excess of TWO MILLION, THREE-HUNDRED AND THIRTY-FOUR THOUSAND, TWO-HUNDRED AND SEVENTY-NINE and 48/100 DOLLARS ($2,334,279.48) in unpaid principal, accrued interest, and default interest. Interest and default interest accrued and unpaid on the total principal balance through and including October 3, 2008 is THREE-HUNDRED AND THIRTY-FOUR THOUSAND, TWO-HUNDRED AND SEVENTY-NINE and 48/100 DOLLARS ($334,279.48). Interest continues to accrue (at the Note default rate) in the amount of ONE-THOUSAND EIGHT and 22/100 DOLLARS ($1008.22) per day.

23.    Tvestments has expended and will expend during the pendency of this suit certain necessary costs to protect its security, all of which are secured by the Note and Pledge Agreements.

24.    For the purposes of prosecuting this lawsuit, collection and foreclosure, Tvestments has incurred an obligation to pay its attorneys, Wilmer Cutler Pickering Hale and Dorr LLP and Morgan, Lewis & Bockius LLP, a reasonable fee for their services.

25.    There are no conditions precedent to Tvestments' bringing this action.

## COUNT I
### (NOTE)

26.    Tvestments adopts and realleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 · TELEPHONE (305) 415-3000

27.     On or about August 30, 2007, LK executed the Note in favor of Tvestments in the original principal amount of TWO MILLION and no/100 DOLLARS ($2,000,000.00).

28.     Tvestments owns and holds the Note and the Pledge Agreements securing it.

29.     LK has defaulted under the Note by failing to pay sums due and owing under the Note by August 30, 2008.

30.     Tvestments has notified LK of its default and demanded that LK make full and complete payment under the Note or provide a written, feasible plan for prompt payment by close of business on October 2, 2008.

31.     The monies loaned pursuant to the Note are due and owing.

32.     LK has failed and/or refused to pay the monies due under the Note.

33.     As of October 3, 2008, LK owes Tvestments in excess of TWO MILLION, THREE-HUNDRED AND THIRTY-FOUR THOUSAND, TWO-HUNDRED AND SEVENTY-NINE and 48/100 DOLLARS ($2,334,279.48), including unpaid principal, accrued interest, and default interest, which continues to accrue in a per diem amount, plus interest, attorneys' fees, and costs.

34.     There are no conditions precedent to Tvestments' bringing this action.

35.     Because of LK's default and by virtue of the Note, Tvestments has been damaged and is entitled to the relief requested herein.

Wherefore, Tvestments demands judgment against LK for all sums found to be due and owing under the Note, together with interest, default interest, court costs, and reasonable attorneys' fees, and/or any other relief this Court deems just and proper.

51.     As of October 3, 2008, LK owes Tvestments in excess of TWO MILLION, THREE-HUNDRED AND THIRTY-FOUR THOUSAND, TWO-HUNDRED AND SEVENTY-NINE and 48/100 DOLLARS ($2,334,279.48), including unpaid principal, accrued interest, and default interest, which continues to accrue in a per diem amount, plus interest, attorneys' fees, and costs.

52.     There are no conditions precedent to Tvestments' bringing this action.

53.     Because of LK's default on the Note and by virtue of the Special K Pledge Agreement, Tvestments is entitled to the relief requested herein.

Wherefore, Tvestments demands judgment against Special K and seeks an order that Special K's membership interests in SATV be sold under final judgment of foreclosure and sale pursuant to Section 45.031 of the Florida Statutes; that if the proceeds of the sale are insufficient to pay Tvestments' claim, that a deficiency judgment be entered for the remaining sum unpaid against Defendant LK; that all parties claiming any interest in SATV, including Defendants herein and any parties claiming an interest subsequent to the filing of this action, be barred and foreclosed of all right, title, interest, equity of redemption, or lien in, to, or against SATV.

Dated this **25th** day of October, 2008.

Respectfully submitted,

Derek E. León
Florida Bar No. 0625507
John B. Rosenquest IV
   Florida Bar No. 0048431
Morgan, Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339
Telephone:     305.415.3431
Facsimile:      305.415.3001
E-mail:          dleon@morganlewis.com
                    jrosenquest@morganlewis.com

*Counsel for Tvestments, Ltd*

# EXHIBIT A

## SECURED PROMISSORY NOTE

August 30, 2007                                                            $2,000,000.00

For value received, the undersigned, L.K. Station Group LLC, a Florida limited liability company ("Payor"), promises to pay to Tvestments, Ltd., a British Virgin Islands company ("Payee"), the principal sum of Two Million Dollars ($2,000,000.00) upon the terms and conditions set forth herein.

Payor further agrees to pay interest on the principal amount hereof from time to time outstanding from and including the date hereof to but excluding the date such principal is paid in full at a rate per annum equal to 15%. Interest shall accrue monthly in arrears. Accrued and unpaid interest on the unpaid principal of this Note shall be due and payable in a balloon payment at maturity or, in the event this Note is prepaid or refinanced, at the time of such prepayment or refinancing. Interest shall be computed for the actual number of days elapsed on the basis of a 360-day year. Notwithstanding anything to the contrary contained herein, Payor shall never be required to pay interest on this Note at a rate in excess of the maximum interest rate that may be lawfully charged in the State of New York or any other applicable jurisdiction.

The aggregate unpaid principal amount of this Note, together with all accrued and unpaid interest thereon, shall be due and payable on August 30, 2008, or such earlier date on which Payee declares all obligations of Payor under this Note due and payable in accordance with the terms hereof. In the event Payor prepays all or any portion of this Note, Payor shall, at the time of prepayment, pay a prepayment penalty equal to five percent (5%) of the outstanding principal balance of the Note immediately prior to such prepayment, *provided however*, that if the prepayment is made due to a refinancing or any other type of financial transaction between the Payor and a related party of the Payee (directly or indirectly), then no prepayment penalty shall be due. Payor shall prepay this Note with the net cash proceeds of any issuance by Payor of indebtedness under any credit agreement, indenture, note, or similar credit facility (other than this Note) entered into to finance or refinance the acquisition of the Stations.

This Note is secured pursuant to a separate Collateral Assignment of Asset Purchase Agreement dated the date hereof from Payor (hereinafter also the "Assignor") to Payee, a Pledge Agreement dated the date hereof between SNL Management Group, LLC and the Payee and a Pledge Agreement dated the date hereof between Special K Investors, LLC and the Payee (each as amended, restated, or otherwise modified from time to time, a "Collateral Assignment"). The proceeds of this Note may be used solely for the payment of an earnest money deposit to be held in escrow to secure performance under that certain Asset Purchase Agreement by and between Payor and TV Acquisition, LLC for the purchase of two television stations, to wit KFTY - San Francisco/Oakland/San Jose, CA and KVOS – Seattle/Tacoma, WA (collectively the "Stations"), and for the payment of reasonable out-of-pocket expenses including but not limited to financial advisory fees and attorneys' fees related to the documentation of the Asset Purchase Agreement of the Stations, Payee's attorneys' fees in connection with the preparation of this Note and collateral thereto, and corporate documents of Payor, as well as documentary stamp taxes and recording fees associated with this Note. In the event that for any reason the earnest money deposit is refundable to Payor under the Asset Purchase Agreement, such deposit shall be promptly paid over directly to Payee from the escrow agent.

All payments of principal and interest shall be made to Payee at the office of Payee located at 701 Brickell Avenue, Suite 2550, Miami, Florida 33131 (or such other office as Payee shall specify in writing to Payor) not later than noon on the date due, and funds received after that time shall be deemed to have been received by the Payee on the immediately following Business Day (as defined below). If any date on which a payment of principal or interest is required to be made hereunder shall fall on a day other than a Business Day, such payment shall be due and payable on the next succeeding Business Day along with, in the case of principal, additional interest through the payment date. All payments received by Payee shall be applied to the obligations of Payor arising under or in connection with this Note in such order as Payee may determine in its sole discretion. As used herein, "Business Day" means a day other than a Saturday, Sunday, or other day on which banks are closed in New York, New York.

Payor warrants to Payee that: (a) Payor is duly organized, validly existing, and in good standing under the laws of its State of formation; (b) the execution and delivery of this Note and the performance by Payor of its obligations hereunder (i) are within Payor's powers, (ii) have been duly authorized by all necessary action on Payor's part, (iii) do not and will not contravene or conflict with Payor's organizational documents, violate or constitute a default under any law, any presently existing requirement or restriction imposed by any judicial, arbitral, or other governmental instrumentality or any agreement, instrument or indenture by which Payor is bound, or (iv) result in, or require, the creation or imposition of any lien or other encumbrance on any property of Payor (other than liens and other encumbrances in favor of Payee); and (c) this Note constitutes a legal, valid and binding obligation of Payor, enforceable against Payor in accordance with its terms, subject to applicable bankruptcy, insolvency, moratorium or other similar laws affecting the rights of creditors generally.

Any of the following events shall constitute an Event of Default under this Note:

(a) failure by Payor to pay (i) any principal of this Note when due or (ii) any interest or other amount payable under this Note within five days after the same shall become due;

(b) any representation or warranty made by Payor in this Note is untrue or misleading in any material respect;

(c) any representation or warranty made by the Assignor in a Collateral Assignment is untrue or misleading in any material respect and, as a result thereof, Payee's security interest in any material portion of the collateral thereunder is not perfected or Payee's rights and remedies with respect to any material portion of the collateral thereunder are materially impaired or otherwise materially adversely affected;

(d) the Assignor shall fail to comply with or to perform in any material respect any provision of a Collateral Assignment, or the Assignor shall contest in any manner the validity, binding nature, or enforceability of a Collateral Assignment;

*Secured Promissory Note*

(e)     a final judgment or order for the payment of money in excess of $500,000.00 shall be rendered against Payor and such judgment or order shall continue unsatisfied and unstayed for a period of 30 days;

(f)     any default beyond any applicable notice and cure period with respect to any indebtedness owing by Payor having an aggregate principal amount in excess of $500,000.00;

(g)     Payor becomes insolvent or generally fails to pay, or admits in writing its inability to pay its debts as they become due; Payor applies for a trustee, receiver, or other custodian for it or a substantial part of its property; a trustee, receiver, or other custodian is appointed for Payor or for a substantial part of its property; or any bankruptcy, reorganization, debt arrangement, or other case or proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding, is commenced in respect of Payor.

At any time an Event of Default under this Note shall have occurred and be continuing, Payor will, at the option of Payee, pay interest on the entire unpaid principal balance hereof at the rate per annum equal to the maximum default rate allowed under the laws of the State of New York. If any Event of Default described in clause (g) above occurs, then all obligations of Payor hereunder shall become immediately due and payable. If any other Event of Default occurs and is continuing, then Payee may declare all obligations of Payor hereunder to be immediately due and payable (whereupon all such obligations shall become immediately due and payable without notice of any kind).

Payor agrees to pay all expenses of Payee in connection with the preparation, execution and delivery of this Note. In addition, Payor will pay all costs and expenses (including, without limitation, reasonable attorneys' fees and court costs) incurred by Payee in connection with any Event of Default hereunder, the enforcement of its rights hereunder and the collection of the amounts payable hereunder (in each case whether or not any lawsuit is ever filed).

All parties hereto, whether as makers, endorsers, or otherwise, severally waive presentment for payment, protest, and notice of dishonor.

It is intended that all interest paid hereunder shall constitute "portfolio interest" within the meaning of Sections 871(h) and 881(c) of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder. This Note is a registered instrument and is not a bearer instrument. This Note is registered as to both principal and interest with Payor. Transfer of this Note may be effected only by surrender of this Note to Payor and the re-issuance of this Note or the issuance of a new Note to the transferee. Any attempted transfer in violation of this paragraph shall be void and of no force and effect. Until there has been a valid transfer of this Note and of all of the rights hereunder by Payee in accordance with this paragraph, Payor shall deem and treat Payee as the absolute beneficial owner and holder of this Note and of all of the rights hereunder for all purposes (including, without limitation, for the purpose of receiving all payments to be made under this Note).

*Secured Promissory Note*

Payor (or its duly authorized agent) shall maintain or cause to be maintained a registry (the "Registry") of the ownership of the Note at its principal office (or the principal office of its duly authorized agent). The Registry shall reflect Payee as the original owner of the Note. If Payor appoints another person to act as its duly authorized agent for purposes of maintaining the Registry, Payor will notify Payee of the name and address of that agent and will require that agent to execute a written agreement in which such agent agrees as follows: "Agent agrees to act as agent for the Payor under the Note for purposes of maintaining the "Registry" and to act as "withholding agent" for the Payor within the meaning of Treasury Regulation § 1.1441-7(a)(1)."

This Note may not be changed or modified orally.

THIS NOTE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE. EACH OF PAYOR AND, BY ITS ACCEPTANCE HEREOF, THE PAYEE WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS NOTE OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT, OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first above written.

PAYOR:
L.K. Station Group, LLC

By: Barbara Laurence
Its: Manager

STATE OF FLORIDA                    )
                                    )
COUNTY OF MIAMI DADE                )

The foregoing instrument was acknowledged before me, a Notary Public in and for said County and State, on this 30 day of August, 2007, personally appeared _____, as the _____ on behalf of L.K. Station Group, LLC, who is personally known to me or produced _____ as identification.

Print Name: LINDA C KERR
Notary Public, State of Florida at Large

(SEAL)                              My Commission Expires: _____

Notary Public State of Florida
Linda C Kerr
My Commission DD482512
Expires 12/01/2009

Page 4 of 4

*Secured Promissory Note*

# EXHIBIT B

PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT is dated August 30, 2007, between, SLN Management Group, LLC, a Delaware limited liability company, as pledgor ("Pledgor") and Tvestments, Ltd, a British Virgin Islands company, as secured party ("Secured Party").

WHEREAS, L.K. Station Group, LLC, (the "Borrower") is indebted to Secured Party under the terms of that certain Promissory Note of even date herewith, in the original principal amount of US$2,000,000.00, signed by Borrower and delivered to Secured Party (the "Note", by this reference made an integral part hereof);

WHEREAS, in order to secure Borrower's obligations under the Note (collectively, the "Obligations"), Pledgor agrees to pledge to Secured Party all of Pledgor's membership interest in and to SATV 10, LLC; and

WHEREAS, Pledgor now grants to Secured Party a first priority security interest in the Collateral (hereinafter defined) in the manner set forth herein.

NOW, THEREFORE, it is agreed:

1.    Security Interest. To secure Borrower's performance of the Obligations, Pledgor hereby grants to Secured Party a first priority security interest and continuing lien in the membership interest of Pledgor in SATV 10, LLC or any interest in substitution or exchange therefor, and all proceeds thereof (collectively, the "Collateral").

2.    Representations and Warranties. Pledgor represents and warrants to Secured Party as follows:

(a)    Pledgor (i) is a limited liability company duly organized and validly existing under the laws of the State of Delaware, and (ii) has all necessary power and authority to own its properties and assets and to engage in the business it conducts.

(b)    Neither the execution and delivery of this Agreement nor compliance with or observance of the provisions thereof will (i) violate, conflict with or contravene any law, governmental rule, ordinance or regulation applicable to Pledgor now in effect, or any provisions of the Pledgor's Certificate of Incorporation, (ii) require any consent or vote of any shareholder or director of Pledgor which has not been obtained or (iii) conflict with or result in the breach of any terms, conditions or provisions of any contract or agreement of which Pledgor is a party or by which it is bound, or any judgment, order or decree of any court, arbitrator, administrative agency or other governmental authority or any agreement or instrument to which Pledgor is a party, or constitute a default thereunder or result in the acceleration of any obligation of Pledgor.

(c)    Pledgor has the power and authority to enter into and perform this Agreement and to incur the obligations provided for herein and has taken all necessary action to authorize the execution, delivery and performance of the same.

(d)    The execution, delivery and performance by Pledgor of this Agreement has been duly authorized by Pledgor. This Agreement is and continues to be a legal, valid, and

1

binding obligation of Pledgor, enforceable in accordance with its terms, subject to applicable bankruptcy laws and general principles of equity.

(e)     Pledgor is the sole record and beneficial owner of 50% of the issued and outstanding membership interests of SATV 10, LLC, free and clear of all liens, security interests, encumbrances or other right, title, option, warrant, right to purchase and interest of any other person or party (before giving effect to the pledge granted hereunder). No interest in the Collateral has been previously transferred, assigned, pledged or otherwise hypothecated by Pledgor and Pledgor shall not transfer any portion thereof other than (y) subject to the lien created hereby, (z) with the prior written consent of Secured Party. Pledgor shall defend the Collateral against all claims and demands of any other person or party at any time claiming the same or any interest therein adverse to Secured Party, including, without limitation any interest which is senior, equal to or junior to the security interest herein granted.

(f)     There is no litigation pending or, to the best of Pledgor's knowledge, threatened in any court or jurisdiction, an adverse outcome of which would affect in an adverse manner Pledgor's interests in the Collateral or Pledgor's obligations under this Agreement.

(g)     Pledgor has delivered to Secured Party certificates evidencing the Collateral, endorsed in blank (or, if such certificates have not been delivered to Pledgor as of the date hereof, Pledgor will deliver the same to Secured Party promptly upon Pledgor's receipt thereof).

(h)     Subject to Section 3(f) hereof, upon the occurrence and during the continuance of an Event of Default (as defined in the Note), all rights of Pledgor to exercise or refrain from exercising the voting and other consensual rights which it would otherwise be entitled to exercise with respect to the Collateral shall cease, and all such rights shall thereupon become vested in Secured Party, which shall thereupon have the sole right to exercise or refrain from exercising such voting and other consensual rights.

(i)     The granting of the security interest in the Collateral by Pledgor and the execution, delivery and performance by Pledgor of this Agreement do not result in any breach of, or constitute a default under any agreement, any law, statute, order, writ, injunction, or decree of any court or governmental authority, mortgage, deed of trust, lease or other instrument, document or agreement binding on Pledgor, nor is any consent or approval of any governmental body, or regulatory authority required for the validity of this Agreement or the validity or enforceability of the security interest granted herein as a first priority security interest; provided, however, that the exercise by Secured Party of certain remedies after an Event of Default (as defined in the Note) may require the prior approval of the Federal Communications Commission ("FCC").

3.     Covenants. Pledgor covenants and agrees with Secured Party as follows:

(a)     Pledgor shall do or cause to be done all things necessary to preserve and keep in full force and effect Pledgor's existence as a Delaware limited liability company, and shall comply and cause Pledgor to comply, in all material respects, with all laws applicable to the

2

recognition of the security interest granted herein, and all laws, rules and regulations relating to the continued existence of limited liability companies formed in the State of Delaware.

(b)      Pledgor shall not assign, sell, mortgage, lease, transfer, pledge, grant a security interest in or lien upon, encumber, or otherwise dispose of any part or all of the Collateral.

(c)      Pledgor shall, at any time and from time to time, at its own expense, perform all acts and execute all documents requested by Secured Party at any time to evidence, perfect, maintain and enforce Secured Party's security interest in the Collateral or otherwise in furtherance of the provisions of this Agreement.

(d)      Upon request of Secured Party, Pledgor shall, at any time and from time to time, at its own expense, deliver to Secured Party any financial statements, papers, documents or other instruments requested by Secured Party in connection with this Agreement.

(e)      During the continuance of an Event of Default (as defined in the Note), Pledgor shall promptly pay Secured Party for any and all sums, costs, and expenses which Secured Party may pay or incur pursuant to the provisions of this Agreement or in defending, protecting or enforcing the security interest granted herein or otherwise in connection with the provisions hereof, including, but not limited to, all court costs, collection charges and reasonable attorneys' fees, all of which shall be secured hereby and payable on demand.

(f)      <u>Rights and Remedies of Secured Party</u>. Upon the occurrence of an Event of Default (as defined in the Note), and during the continuance thereof, Secured Party may, in addition to any other rights and remedies which Secured Party may have, immediately, and without demand, exercise with respect to the Collateral any and all of the rights and remedies granted to a secured party under the Uniform Commercial Code (the "UCC") now or hereafter in effect or otherwise available to it under law or under this Agreement; provided, however, that Secured Party agrees that: (a) voting rights in SATV 10, LLC held or owned by Pledgor will remain with the holders thereof even while an Event of Default (as defined in the Note) continues until any required prior consent of the FCC shall be obtained to the transfer of such voting rights; (b) following an Event of Default (as defined in the Note), any sale conducted by Secured Party to exercise its rights under this Pledge Agreement or the Note shall be by a private or public sale; and (c) prior to the exercise of rights of an assignee of FCC licenses or the holder of interests in SATV 10, LLC by a purchaser at such sale, the prior consent of the FCC, pursuant to 47 U.S.C. §310(d), in each case only if required, will be obtained prior to such exercise.

4.      <u>Application of Moneys</u>. All moneys and other property received or collected by Secured Party upon the sale or other realization upon the Collateral shall be applied to the Obligations in such manner as Secured Party may elect.

5.      <u>Secured Party's Authority to Act</u>. Pledgor hereby authorizes and empowers Secured Party as the attorney-in-fact of Pledgor, at any time after an Event of Default (as defined in the Note) has occurred and during the continuance thereof, without notice, for the use and benefit of Secured Party to take all steps which Secured Party shall in its sole discretion deem necessary to enforce the rights of Secured Party in and to the Collateral. The power-of-attorney

3

granted to Secured Party pursuant to this paragraph shall be deemed to be coupled with an interest and shall be irrevocable until all the Obligations have been fully satisfied.

6.  Cumulative Rights and Remedies. All remedies afforded to Secured Party by reason of this Agreement are separate and cumulative remedies, and no one of such remedies shall be deemed to be in exclusion of any other remedies available to Secured Party and shall not in any manner limit or prejudice any other legal or equitable remedies which Secured Party may have.

7.  Costs and Expenses. Pledgor shall pay all reasonable costs, fees, expenses and charges incurred in connection with any action brought to enforce this Agreement and the security interest granted hereunder (including without limitation all reasonable fees and disbursements of legal counsel). Any such costs, fees, expenses and charges so incurred by Secured Party shall constitute part of the Obligations and shall be secured hereby.

8.  Non-Waiver. No failure to delay on the part of Secured Party in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise of any such right or power hereunder. No modification or waiver of any provision of this Agreement, nor consent to any departure by Pledgor therefrom shall be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. If any notice is required by law to be given to Pledgor by Secured Party, 30 days' notice, or such shorter period as may be provided by law or may be reasonable under the circumstances, to Pledgor in accordance with section 9 below shall be deemed for all purposes to be reasonable notice.

9.  Notices. Any notice, request, demand, statement or consent made hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested, by nationally recognized overnight courier or by facsimile and shall be deemed given upon receipt as follows:

If to Secured Party:

Tvestments, Ltd.
Attention: Legal Department
701 Brickell Avenue, Suite 2550
Miami, FL 33131
Fax: 305-358-5186

If to Pledgor, to:

Barbara Laurence
SLN Management Group, LLC
10155 Collins Avenue
Suite 1505
Bal Harbour, FL 33154

4

A properly addressed notice shall be deemed received if sent: (i) by courier, then on the Business Day of receipt; (ii) by facsimile, then on the Business Day of receipt, as proved by a transmission confirmation received by the sender; or (iii) by mail, then five (5) Business Days after mailing. Notices of changed address or fax number shall not be effective until received. Counsel for any party (whether or not identified above or in a notice) may give notice on behalf of the party.

10. <u>Amendments</u>. This Agreement may not be modified, amended, changed, discharged or terminated except by an agreement in writing signed by the parties hereto.

11. <u>Severability</u>. If any term, covenant or provision of this Agreement shall be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision, and the enforceability of any other provision of this Agreement shall not be affected thereby.

12. <u>Parties Bound</u>. This Agreement shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns. Secured Party may transfer or assign this Agreement at any time in its sole discretion.

13. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements executed and fully performed in such State.

14. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to constitute but one and the same instrument.

15. <u>Captions</u>. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

16. <u>Entire Agreement</u>. This Agreement and the Promissory Note executed on even date herewith and incorporated herein by reference constitute the entire agreement of the parties as to the subject matter hereof.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the date first above written.

Pledgor:                                                     Secured Party:

SLN Management Group, LLC                Tvestments, Ltd

By: _____              By: _____
Name: Barbara Laurence                       Name:
Title: Manager                                      Title:

5

A properly addressed notice shall be deemed received if sent: (i) by courier, then on the Business Day of receipt; (ii) by facsimile, then on the Business Day of receipt, as proved by a transmission confirmation received by the sender; or (iii) by mail, then five (5) Business Days after mailing. Notices of changed address or fax number shall not be effective until received. Counsel for any party (whether or not identified above or in a notice) may give notice on behalf of the party.

10.   Amendments. This Agreement may not be modified, amended, changed, discharged or terminated except by an agreement in writing signed by the parties hereto.

11.   Severability. If any term, covenant or provision of this Agreement shall be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision, and the enforceability of any other provision of this Agreement shall not be affected thereby.

12.   Parties Bound. This Agreement shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns. Secured Party may transfer or assign this Agreement at any time in its sole discretion.

13.   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements executed and fully performed in such State.

14.   Counterparts. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to constitute but one and the same instrument.

15.   Captions. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

16.   Entire Agreement. This Agreement and the Promissory Note executed on even date herewith and incorporated herein by reference constitute the entire agreement of the parties as to the subject matter hereof.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the date first above written.

Pledgor:                                    Secured Party:

SLN Management Group, LLC                   Tvestments, ltd

By: _____                 By: _____
Name: Barbara Laurence                      Name: Adan Hertinez Martinez
Title: Manager                              Title: Director

5

# EXHIBIT C

## PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT is dated August 30, 2007, between, SPECIAL K INVESTORS, LLC, a Delaware limited liability company, as pledgor ("Pledgor") and Tvestments, Ltd, a British Virgin Islands company, as secured party ("Secured Party").

WHEREAS, L.K. Station Group, LLC, (the "Borrower") is indebted to Secured Party under the terms of that certain Promissory Note of even date herewith, in the original principal amount of US$2,000,000,00, signed by Borrower and delivered to Secured Party (the "Note", by this reference made an integral part hereof);

WHEREAS, in order to secure Borrower's obligations under the Note (collectively, the "Obligations"), Pledgor agrees to pledge to Secured Party all of Pledgor's membership interest in and to SATV 10, LLC; and

WHEREAS, Pledgor now grants to Secured Party a first priority security interest in the Collateral (hereinafter defined) in the manner set forth herein.

NOW, THEREFORE, it is agreed:

1.     Security Interest. To secure Borrower's performance of the Obligations, Pledgor hereby grants to Secured Party a first priority security interest and continuing lien in the membership interest of Pledgor in SATV 10, LLC or any interest in substitution or exchange therefor, and all proceeds thereof (collectively, the "Collateral").

2.     Representations and Warranties. Pledgor represents and warrants to Secured Party as follows:

(a)     Pledgor (i) is a limited liability company duly organized and validly existing under the laws of the State of Delaware, and (ii) has all necessary power and authority to own its properties and assets and to engage in the business it conducts.

(b)     Neither the execution and delivery of this Agreement nor compliance with or observance of the provisions thereof will (i). violate, conflict with or contravene any law, governmental rule, ordinance or regulation applicable to Pledgor now in effect, or any provisions of the Pledgor's Certificate of Incorporation, (ii) require any consent or vote of any shareholder or director of Pledgor which has not been obtained or (iii) conflict with or result in the breach of any terms, conditions or provisions of any contract or agreement of which Pledgor is a party or by which it is bound, or any judgment, order or decree of any court, arbitrator, administrative agency or other governmental authority or any agreement or instrument to which Pledgor is a party, or constitute a default thereunder or result in the acceleration of any obligation of Pledgor.

(c)     Pledgor has the power and authority to enter into and perform this Agreement and to incur the obligations provided for herein and has taken all necessary action to authorize the execution, delivery and performance of the same.

(d)     The execution, delivery and performance by Pledgor of this Agreement has been duly authorized by Pledgor. This Agreement is and continues to be a legal, valid, and

1

Confidential

DEF002978

binding obligation of Pledgor, enforceable in accordance with its terms, subject to applicable bankruptcy laws and general principles of equity.

(e)     Pledgor is the sole record and beneficial owner of 50% of the issued and outstanding membership interests of **SATV 10, LLC**, free and clear of all liens, security interests, encumbrances or other right, title, option, warrant, right to purchase and interest of any other person or party (before giving effect to the pledge granted hereunder). No interest in the Collateral has been previously transferred, assigned, pledged or otherwise hypothecated by Pledgor and Pledgor shall not transfer any portion thereof other than (y) subject to the lien created hereby, (z) with the prior written consent of Secured Party. Pledgor shall defend the Collateral against all claims and demands of any other person or party at any time claiming the same or any interest therein adverse to Secured Party, including, without limitation any interest which is senior, equal to or junior to the security interest herein granted.

(f)     There is no litigation pending or, to the best of Pledgor's knowledge, threatened in any court or jurisdiction, an adverse outcome of which would affect in an adverse manner Pledgor's interests in the Collateral or Pledgor's obligations under this Agreement.

(g)     Pledgor has delivered to Secured Party certificates evidencing the Collateral, endorsed in blank (or, if such certificates have not been delivered to Pledgor as of the date hereof, Pledgor will deliver the same to Secured Party promptly upon Pledgor's receipt thereof).

(h)     Subject to Section 3(f) hereof, upon the occurrence and during the continuance of an Event of Default (as defined in the Note), all rights of Pledgor to exercise or refrain from exercising the voting and other consensual rights which it would otherwise be entitled to exercise with respect to the Collateral shall cease, and all such rights shall thereupon become vested in Secured Party, which shall thereupon have the sole right to exercise or refrain from exercising such voting and other consensual rights.

(i)     The granting of the security interest in the Collateral by Pledgor and the execution, delivery and performance by Pledgor of this Agreement do not result in any breach of, or constitute a default under any agreement, any law, statute, order, writ, injunction, or decree of any court or governmental authority, mortgage, deed of trust, lease or other instrument, document or agreement binding on Pledgor, nor is any consent or approval of any governmental body, or regulatory authority required for the validity of this Agreement or the validity or enforceability of the security interest granted herein as a first priority security interest; provided, however, that the exercise by Secured Party of certain remedies after an Event of Default (as defined in the Note) may require the prior approval of the Federal Communications Commission ("FCC").

3.     <u>Covenants</u>. Pledgor covenants and agrees with Secured Party as follows:

(a)     Pledgor shall do or cause to be done all things necessary to preserve and keep in full force and effect Pledgor's existence as a Delaware limited liability company, and shall comply and cause Pledgor to comply, in all material respects, with all laws applicable to the

Confidential

DEF002979

recognition of the security interest granted herein, and all laws, rules and regulations relating to the continued existence of limited liability companies formed in the State of Delaware.

(b)     Pledgor shall not assign, sell, mortgage, lease, transfer, pledge, grant a security interest in or lien upon, encumber, or otherwise dispose of any part or all of the Collateral.

(c)     Pledgor shall, at any time and from time to time, at its own expense, perform all acts and execute all documents requested by Secured Party at any time to evidence, perfect, maintain and enforce Secured Party's security interest in the Collateral or otherwise in furtherance of the provisions of this Agreement.

(d)     Upon request of Secured Party, Pledgor shall, at any time and from time to time, at its own expense, deliver to Secured Party any financial statements, papers, documents or other instruments requested by Secured Party in connection with this Agreement.

(e)     During the continuance of an Event of Default (as defined in the Note), Pledgor shall promptly pay Secured Party for any and all sums, costs, and expenses which Secured Party may pay or incur pursuant to the provisions of this Agreement or in defending, protecting or enforcing the security interest granted herein or otherwise in connection with the provisions hereof, including, but not limited to, all court costs, collection charges and reasonable attorneys' fees, all of which shall be secured hereby and payable on demand.

(f)     Rights and Remedies of Secured Party. Upon the occurrence of an Event of Default (as defined in the Note), and during the continuance thereof, Secured Party may, in addition to any other rights and remedies which Secured Party may have, immediately, and without demand, exercise with respect to the Collateral any and all of the rights and remedies granted to a secured party under the Uniform Commercial Code (the "UCC") now or hereafter in effect or otherwise available to it under law or under this Agreement; provided, however, that Secured Party agrees that: (a) voting rights in SATV 10, LLC held or owned by Pledgor will remain with the holders thereof even while an Event of Default (as defined in the Note) continues until any required prior consent of the FCC shall be obtained to the transfer of such voting rights; (b) following an Event of Default (as defined in the Note), any sale conducted by Secured Party to exercise its rights under this Pledge Agreement or the Note shall be by a private or public sale; and (c) prior to the exercise of rights of an assignee of FCC licenses or the holder of interests in SATV 10, LLC by a purchaser at such sale, the prior consent of the FCC, pursuant to 47 U.S.C. §310(d), in each case only if required, will be obtained prior to such exercise.

4.     Application of Moneys. All moneys and other property received or collected by Secured Party upon the sale or other realization upon the Collateral shall be applied to the Obligations in such manner as Secured Party may elect.

5.     Secured Party's Authority to Act. Pledgor hereby authorizes and empowers Secured Party as the attorney-in-fact of Pledgor, at any time after an Event of Default (as defined in the Note) has occurred and during the continuance thereof, without notice, for the use and benefit of Secured Party to take all steps which Secured Party shall in its sole discretion deem necessary to enforce the rights of Secured Party in and to the Collateral. The power-of-attorney

3

DEF002980

granted to Secured Party pursuant to this paragraph shall be deemed to be coupled with an interest and shall be irrevocable until all the Obligations have been fully satisfied.

      6.    Cumulative Rights and Remedies. All remedies afforded to Secured Party by reason of this Agreement are separate and cumulative remedies, and no one of such remedies shall be deemed to be in exclusion of any other remedies available to Secured Party and shall not in any manner limit or prejudice any other legal or equitable remedies which Secured Party may have.

      7.    Costs and Expenses. Pledgor shall pay all reasonable costs, fees, expenses and charges incurred in connection with any action brought to enforce this Agreement and the security interest granted hereunder (including without limitation all reasonable fees and disbursements of legal counsel). Any such costs, fees, expenses and charges so incurred by Secured Party shall constitute part of the Obligations and shall be secured hereby.

      8.    Non-Waiver. No failure to delay on the part of Secured Party in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise of any such right or power hereunder. No modification or waiver of any provision of this Agreement, nor consent to any departure by Pledgor therefrom shall be effective unless the same shall be in writing and signed by Secured Party, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. If any notice is required by law to be given to Pledgor by Secured Party, 30 days' notice, or such shorter period as may be provided by law or may be reasonable under the circumstances, to Pledgor in accordance with section 9 below shall be deemed for all purposes to be reasonable notice.

      9.    Notices. Any notice, request, demand, statement or consent made hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested, by nationally recognized overnight courier or by facsimile and shall be deemed given upon receipt as follows:

             If to Secured Party:

             Tvestments, Ltd.
             Attention: Legal Department
             701 Brickell Avenue, Suite 2550
             Miami, FL 33131
             Fax: 305-358-5186

             If to Pledgor, to:

             Seth Kanegis
             SPECIAL K INVESTORS, LLC
             1000 South Pointe Drive, Suite 2601
             Miami Beach, FL 33169] .

4

DEF002981

A properly addressed notice shall be deemed received if sent: (i) by courier, then on the Business Day of receipt; (ii) by facsimile, then on the Business Day of receipt, as proved by a transmission confirmation received by the sender; or (iii) by mail, then five (5) Business Days after mailing. Notices of changed address or fax number shall not be effective until received. Counsel for any party (whether or not identified above or in a notice) may give notice on behalf of the party.

10.   Amendments. This Agreement may not be modified, amended, changed, discharged or terminated except by an agreement in writing signed by the parties hereto.

11.   Severability. If any term, covenant or provision of this Agreement shall be ~~held or otherwise unenforceable in any respect~~, this Agreement shall be construed without such term, covenant or provision, and the enforceability of any other provision of this Agreement shall not be affected thereby.

12.   Parties Bound. This Agreement shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns. Secured Party may transfer or assign this Agreement at any time in its sole discretion.

13.   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements executed and fully performed in such State.

14.   Counterparts. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to constitute but one and the same instrument.

15.   Captions. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

16.   Entire Agreement. This Agreement and the Promissory Note executed on even date herewith and incorporated herein by reference constitute the entire agreement of the parties as to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the date first above written.

Pledgor:

SPECIAL K INVESTORS INC.
By: _____
Name: Seth Kanegis
Title: President

Secured Party:

Tvestments, Ltd

By: _____
Name:
Title:

5

Confidential

DEF002983

A properly addressed notice shall be deemed received if sent: (i) by courier, then on the Business Day of receipt; (ii) by facsimile, then on the Business Day of receipt, as proved by a transmission confirmation received by the sender; or (iii) by mail, then five (5) Business Days after mailing. Notices of changed address or fax number shall not be effective until received. Counsel for any party (whether or not identified above or in a notice) may give notice on behalf of the party.

10.     Amendments. This Agreement may not be modified, amended, changed, discharged or terminated except by an agreement in writing signed by the parties hereto.

11.     Severability. If any term, covenant or provision of this Agreement shall be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision, and the enforceability of any other provision of this Agreement shall not be affected thereby.

12.     Parties Bound. This Agreement shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns. Secured Party may transfer or assign this Agreement at any time in its sole discretion.

13.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements executed and fully performed in such State.

14.     Counterparts. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to constitute but one and the same instrument.

15.     Captions. The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

16.     Entire Agreement. This Agreement and the Promissory Note executed on even date herewith and incorporated herein by reference constitute the entire agreement of the parties as to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized officers as of the date first above written.

Pledgor:                                          Secured Party:

SPECIAL K INVESTORS, LLC                          Tvestments, Ltd

By: _____                      By: _____
Name: Seth Kanegis                                Name:  Adon Martinez Martinez
Title: Manager                                    Title:  Director

5

P0046032

# EXHIBIT D

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

JOHN J. ROSENQUEST IV, ESQ.                 3054153407

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

MORGAN LEWIS & BOCKIUS LLP

200 S BISCAYNE BLVD

STE 5300

MIAMI FL 33131

**DELAWARE DEPARTMENT OF STATE**
**U.C.C. FILING SECTION**
**FILED 03:56 PM 09/26/2008**
**INITIAL FILING # 2008 3278114**

**SRV: 080992042**

---

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 1a. ORGANIZATION'S NAME  SLN MANAGEMENT GROUP, LLC | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10155 COLLINS AVE SUITE 1505 | BAL HARBOUR | FL | 33154 | US |

| 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | |
|---|---|---|
| LTD LIABILITY COMPANY | DE | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| OR | 2a. ORGANIZATION'S NAME | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|
| | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| OR | 3a. ORGANIZATION'S NAME  TVESTMENTS, LTD | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 701 BRICKELL AVE SUITE 2550 | MIAMI | FL | 33131 | US |

4. **This FINANCING STATEMENT covers the following collateral:**

A first priority security interest and continuing lien in the membership
interest of  SLN Management Group, LLC in SATV 10, LLC or any interest in
substitution or exchange therefor, and all proceeds thereof.

---

5. ALTERNATIVE DESIGNATION -          2007

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum                    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]                    [optional] | | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

Tvestments-SLN

# EXHIBIT E

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

JOHN J. ROSENQUEST IV, ESQ.          3054153407

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
MORGAN LEWIS & BOCKIUS LLP

200 S BISCAYNE BLVD

STE 5300

MIAMI FL 33131
```

**DELAWARE DEPARTMENT OF STATE**
**U.C.C. FILING SECTION**
**FILED 03:49 PM 09/26/2008**
**INITIAL FILING # 2008 3277827**

**SRV: 080991970**

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME SPECIAL K INVESTORS, INC. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS 1000 SOUTH POINTE DRIVE SUITE 2601 | CITY MIAMI BEACH | STATE FL | POSTAL CODE 33169 | COUNTRY US |
|---|---|---|---|---|

| 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION DE | |
|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
|---|
| |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |
|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME TVESTMENTS, LTD |
|---|

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS 701 BRICKELL AVENUE SUITE 2550 | CITY MIAMI | STATE FL | POSTAL CODE 33131 | COUNTRY US |
|---|---|---|---|---|

4. **This FINANCING STATEMENT covers the following collateral:**

A first priority security interest and continuing lien in the membership
interest of SPECIAL K INVESTORS, INC. in SATV 10, LLC or any interest in
substitution or exchange therefor, and all proceeds thereof.

5. ALTERNATIVE DESIGNATION –   2007

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional]   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

Tvestments

# EXHIBIT F

# WilmerHale

Peter K. Vigeland

+1 212 230 8807 (t)
+1 212 230 8888 (f)
peter.vigeland@wilmerhale.com

October 1, 2008

**By Federal Express**

L.K. Station Group, LLC
Barbara Laurence, Manager
10155 Collins Avenue
Suite 1505
Bal Harbour, FL 33154

Re:    Secured Promissory Note dated August 30, 2007

Dear Ms. Laurence:

This firm has been retained by Tvestments, Ltd ("Tvestments") and related affiliates to prosecute claims arising from the failure of L.K. Station Group, LLC ("LK") to make payment under the promissory note ("the Note") referenced above.

The Note is in default as of August 30, 2008 due to non-payment. Although the Note contains no requirement of a formal demand for payment, we write, as a courtesy, to demand either full payment of the $2 million and accrued interest or a written, feasible plan for prompt payment by close of business on October 2, 2008. As of October 1, 2008, LK owes Tvestments in excess of $2,332,263.04 in unpaid principal, accrued interest, and default interest, plus attorneys' fees and costs.

Should LK not make full and complete payment under the Note or provide us with a written, feasible plan for prompt payment by October 2, we will commence legal proceedings against LK and the two pledgors under the pledge agreements securing the Note, SLN Management Group, LLC and Special K Investors, LLC.

Sincerely,

Peter K. Vigeland

cc:    Arthur Jacobs, Esq. (By Federal Express)

# EXHIBIT G

WILMERHALE

Peter K. Vigeland

+1 212 230 8807 (t)
+1 212 230 8888 (f)
peter.vigeland@wilmerhale.com

October 1, 2008

**By Federal Express**

Barbara Laurence
SLN Management Group, LLC
10155 Collins Avenue
Suite 1505
Bal Harbour, FL 33154

Re:   Pledge Agreement dated August 30, 2007

Dear Ms. Laurence:

Enclosed please find a copy of a Notice of Default and Demand for Payment sent today to L.K. Station Group, LLC ("LK") for its failure to make payment on a promissory note dated August 30, 2007 (the "Note"). LK's failure to pay is an Event of Default under the Note, triggering SLN Management Group, LLC's obligations under the Pledge Agreement signed by you on behalf of SLN Management Group, LLC. Absent LK's full and complete payment under the Note or the provision of a written, feasible plan for prompt payment by close of business on October 2, 2008, this firm, on behalf of Tvestments, Ltd and related affiliates, will commence legal proceedings against SLN Management Group, LLC under the Pledge Agreement referenced above.

Sincerely,

Peter K. Vigeland

Enclosure

cc:   Arthur Jacobs, Esq. (By Federal Express)

WILMERHALE

Peter K. Vigeland

+1 212 230 8807 (t)
+1 212 230 8888 (f)
peter.vigeland@wilmerhale.com

October 1, 2008

**By Federal Express**

L.K. Station Group, LLC
Barbara Laurence, Manager
10155 Collins Avenue
Suite 1505
Bal Harbour, FL 33154

Re:    Secured Promissory Note dated August 30, 2007

Dear Ms. Laurence:

This firm has been retained by Tvestments, Ltd ("Tvestments") and related affiliates to prosecute claims arising from the failure of L.K. Station Group, LLC ("LK") to make payment under the promissory note ("the Note") referenced above.

The Note is in default as of August 30, 2008 due to non-payment. Although the Note contains no requirement of a formal demand for payment, we write, as a courtesy, to demand either full payment of the $2 million and accrued interest or a written, feasible plan for prompt payment by close of business on October 2, 2008. As of October 1, 2008, LK owes Tvestments in excess of $2,332,263.04 in unpaid principal, accrued interest, and default interest, plus attorneys' fees and costs.

Should LK not make full and complete payment under the Note or provide us with a written, feasible plan for prompt payment by October 2, we will commence legal proceedings against LK and the two pledgors under the pledge agreements securing the Note, SLN Management Group, LLC and Special K Investors, LLC.

Sincerely,

Peter K. Vigeland

cc:    Arthur Jacobs, Esq. (By Federal Express)

# EXHIBIT H

WILMERHALE

Peter K. Vigeland

+1 212 230 8807 (t)
+1 212 230 8888 (f)
peter.vigeland@wilmerhale.com

October 1, 2008

**By Federal Express**

Seth Kanegis
Special K Investors, LLC
1000 South Pointe Drive
Suite 2601
Miami Beach, FL 33139

Re:     Pledge Agreement dated August 30, 2007

Dear Mr. Kanegis:

Enclosed please find a copy of a Notice of Default and Demand for Payment sent today to L.K. Station Group, LLC ("LK") for its failure to make payment on a promissory note dated August 30, 2007 (the "Note"). LK's failure to pay is an Event of Default under the Note, triggering Special K Investors, LLC's obligations under the Pledge Agreement signed by you on behalf of Special K Investors, LLC. Absent LK's full and complete payment under the Note or the provision of a written, feasible plan for prompt payment by close of business on October 2, 2008, this firm, on behalf of Tvestments, Ltd and related affiliates, will commence legal proceedings against Special K Investors, LLC under the Pledge Agreement referenced above.

Sincerely,

Peter K. Vigeland

Enclosure

cc:     Arthur Jacobs, Esq. (By Federal Express)

WILMERHALE

**Peter K. Vigeland**

+1 212 230 8807 (t)
+1 212 230 8888 (f)
peter.vigeland@wilmerhale.com

October 1, 2008

**By Federal Express**

L.K. Station Group, LLC
Barbara Laurence, Manager
10155 Collins Avenue
Suite 1505
Bal Harbour, FL 33154

Re:     Secured Promissory Note dated August 30, 2007

Dear Ms. Laurence:

This firm has been retained by Tvestments, Ltd ("Tvestments") and related affiliates to prosecute claims arising from the failure of L.K. Station Group, LLC ("LK") to make payment under the promissory note ("the Note") referenced above.

The Note is in default as of August 30, 2008 due to non-payment.  Although the Note contains no requirement of a formal demand for payment, we write, as a courtesy, to demand either full payment of the $2 million and accrued interest or a written, feasible plan for prompt payment by close of business on October 2, 2008.  As of October 1, 2008, LK owes Tvestments in excess of $2,332,263.04 in unpaid principal, accrued interest, and default interest, plus attorneys' fees and costs.

Should LK not make full and complete payment under the Note or provide us with a written, feasible plan for prompt payment by October 2, we will commence legal proceedings against LK and the two pledgors under the pledge agreements securing the Note, SLN Management Group, LLC and Special K Investors, LLC.

Sincerely,

Peter K. Vigeland

cc:     Arthur Jacobs, Esq. (By Federal Express)

Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, New York 10022

Beijing    Berlin    Boston    Brussels    London    Los Angeles    New York    Oxford    Palo Alto    Waltham    Washington

OJS 44 (Rev. 11/05)

ELECTRONIC

# CIVIL COVER SHEET

**OCT 6, 2008**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, exc This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil do ON THE REVERSE OF THE FORM). **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

TVESTMENTS, LTD

## DEFENDANTS

L.K. STATION GROUP, LLC, a Florida limited liability company, SLN MANAGEMENT, LLC, a Delaware limited liability company, and SPECIAL K INVESTORS, LLC, a Delaware limited liability company

**(b)** County of Residence of First Listed Plaintiff  Miami-Dade County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)

**(c)** Attorneys (Firm Name, Address, and Telephone Number)
Derek E. León, Esq., John B. Rosenquest IV, Esq.
Morgan, Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339, Telephone: 305.415.3431

**ATTORNEYS (IF KNOWN)**

**(d)** Check County Where Action Arose  ☒ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place An 'X' in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not A Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship Of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an 'X' in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*Date 08CV 22779-Jordan/McLiliey*

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced & Corrupt Organization |
| ☐ 152 Recovery of Defaulted Student Loans (Excl.Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commo-dities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 196 Franchise | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting and Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S.) Plaintiff or Def.) | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS- Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S)

(See instructions second page) JUDGE _____ DOCKET NUMBER _____

a) Re-filed Cases : ☐ Yes ☒ No  b) Related Cases : ☐ Yes ☒ No

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity)**
Suit on a promissory note and pledge agreements.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $2,334,279.48 Unspecified

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE

FOR OFFICE USE ONLY

AMOUNT $350.00  RECEIPT # 988378  IFP _____

10/06/08

DB1/62125039.1